

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**JUDGE LEE**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | 16 CR 438 |
| | ) | |
| v. | ) | **MAGISTRATE JUDGE GILBERT** |
| | ) | |
| ARTEM VAULIN, | ) | Violations: Title 17, United States |
|    aka "tirm," | ) | Code, Sections 506(a)(1)(A) and |
| IEVGEN KUTSENKO, | ) | 506(a)(1)(C), and Title 18, United |
|    aka "Eugene Kutsenko" and | ) | States Code, Sections 371, |
|    "chill," and | ) | 1956(a)(2)(A), 1956(a)(2)(B)(i), |
| OLEKSANDR RADOSTIN, | ) | 1956(h), 2319(b)(1), and 2319(d)(2) |
|    aka "Alex Radostin," "pioneer," | ) | |
|    and "pio" | ) | |

**FILED**

## COUNT ONE

AUG 2 3 2016

The SPECIAL JUNE 2015 GRAND JURY charges:

**THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT**

1.    At times material to this indictment:

     a.    "BitTorrent" was a system for quickly distributing large files over the Internet. Instead of downloading a file, such as a movie, from a single source, BitTorrent enabled a user to connect to the computers of other BitTorrent users in order to simultaneously download and upload pieces of the file from and to other users. To use BitTorrent to download that movie, the user had to obtain a "torrent" file for that movie, which contained instructions for identifying the Internet addresses of other BitTorrent users who had the movie, and for downloading the movie from those users. Once a user downloaded all of the pieces of that movie from the other BitTorrent users, the movie was automatically reassembled into its original form, ready for playing.

b.    Kickass Torrents, or "KAT," was a commercial website that facilitated and promoted the reproduction and distribution of copyrighted content over the Internet without the authorization of the copyright owners. KAT created a publicly accessible network that relied on BitTorrent technology, enabling KAT's users to copy and obtain copyrighted material directly from other KAT users for free. KAT also offered users a direct download feature that enabled users to download copyrighted material directly from computer servers associated with KAT rather than from other KAT users. Millions of members were registered with KAT, many of whom resided in the United States. KAT was originally hosted at the domain name kickasstorrents.com, but changed its domain name several times, including to kat.ph, kickass.to, kickass.so, and kat.cr.

c.    Torcache.net was a commercial website that stored and hosted torrent files for the public to download, and encouraged users to upload torrent files for a variety of copyrighted content without authorization, such as movies and television shows.

d.    Leechmonster.com, rolly.com, solarmovie.com, solarmovie.ph, iwatchfilm.com, movie2b.com, hippomovies.com, bino.tv, and moviepro.net were commercial websites that enabled registered users to download or stream copyrighted movies and other media directly from the website, usually in exchange for payment, without authorization from the copyright holders of that media (the "direct download websites").

2

e.     Defendants Artem Vaulin, Ievgen Kutsenko, and Oleksandr Radostin, residents of Ukraine, operated KAT, torcache.net, and the direct download websites.

2.     From at least as early as in or about November 2008, to on or about July 20, 2016, in the Northern District of Illinois, Eastern Division, and elsewhere,

ARTEM VAULIN, aka "tirm,"
IEVGEN KUTSENKO, aka "Eugene Kutsenko" and "chill," and
OLEKSANDR RADOSTIN, aka "Alex Radostin," "pioneer," and "pio,"

defendants herein, together with others known and unknown to the Grand Jury, conspired:

(a)     to willfully, and for purposes of commercial advantage and private financial gain, infringe copyrights by reproduction and distribution of at least ten copies and phonorecords of one or more copyrighted works with a total retail value of more than $2,500 during a 180-day period, in violation of Title 17, United States Code, Section 506(a)(1)(A) and Title 18, United States Code, Section 2319(b)(1); and

(b)     to willfully, and for purposes of commercial advantage and private financial gain, infringe a copyright by distribution of a work being prepared for commercial distribution, by making it available on a computer network accessible to members of the public, when defendants knew and should have known that that work was intended for commercial distribution, in violation of Title 17, United States Code, Section 506(a)(1)(C) and Title 18, United States Code, Section 2319(d)(2).

3.     It was part of the conspiracy that defendants Artem Vaulin, Ievgen Kutsenko, Oleksandr Radostin, and others designed, developed, and operated KAT,

torcache.net, and the direct download websites in order to encourage, induce, facilitate, engage in, and generate millions of dollars from the unlawful reproduction and distribution of copyright-protected media, including movies—some of which were still playing in theaters—television shows, music, video games, computer software, and electronic books, without the authorization of the copyright holders.

### The Operation of KAT

4.     It was further part of the conspiracy that defendants Artem Vaulin, Ievgen Kutsenko, and Oleksandr Radostin made available and caused others to make available without authorization vast amounts of copyrighted content on KAT to millions of individuals in the United States by collecting and uploading torrent files to KAT, and soliciting and inducing KAT's registered users to upload torrent files to KAT, a significant portion of which were torrent files for content protected by United States copyright laws.

5.     It was further part of the conspiracy that defendants Artem Vaulin, Ievgen Kutsenko, and Oleksandr Radostin operated and caused others to operate torcache.net to store and maintain the torrent files for infringed copyrighted content uploaded by KAT users and others, and to enable KAT's users and the general public to download those files.

6.     It was further part of the conspiracy that defendants Artem Vaulin, Ievgen Kutsenko, and Oleksandr Radostin created and implemented and caused others to create and implement "Reputation" and "User Achievement" systems to reward KAT's "Verified Uploaders" for posting torrent files for unauthorized copies of

copyrighted content on KAT, with such "Achievements" to include badges given to registered users for having uploaded over 1,000 torrents.

7.    It was further part of the conspiracy that defendants Artem Vaulin, Ievgen Kutsenko, and Oleksandr Radostin permitted and caused others to permit KAT's registered users to solicit monetary donations from other KAT users.

8.    It was further part of the conspiracy that defendants Artem Vaulin, Ievgen Kutsenko, and Oleksandr Radostin operated and caused others to operate KAT in a manner that provided KAT users information about the identity, source, and quality of the content associated with torrent files on KAT, including the manner in which the content had been unlawfully copied.

9.    It was further part of the conspiracy that defendants Artem Vaulin, Ievgen Kutsenko, and Oleksandr Radostin indexed and caused others to index the torrent files made available on KAT, thus allowing KAT users to easily search for, locate, and obtain torrent files for their desired infringed copyrighted content.

10.    It was further part of the conspiracy that defendants Artem Vaulin, Ievgen Kutsenko, and Oleksandr Radostin sorted and caused others to sort the torrent files made available on KAT by genre, thus allowing KAT users to easily browse, locate, and obtain their desired infringed copyrighted content.

11.    It was further part of the conspiracy that defendants Artem Vaulin, Ievgen Kutsenko, and Oleksandr Radostin updated and caused others to update KAT users regarding new infringed copyrighted content recently made available on KAT.

12.     It was further part of the conspiracy that defendants Artem Vaulin, Ievgen Kutsenko, and Oleksandr Radostin enforced and caused others to enforce a code of conduct whereby registered users were banned from KAT for uploading torrents that contained malware, promoted other torrent sites, or facilitated the download of "banned" content, such as advertising, certain categories of adult-themed content, and media that may have "provoke[d] violence or hatred." KAT's users were not, however, sanctioned for uploading torrents for infringed copyrighted content.

13.     It was further part of the conspiracy that defendants Artem Vaulin, Ievgen Kutsenko, Oleksandr Radostin, and others generated millions of dollars from the copyright-infringing material that KAT made available by soliciting and causing others to solicit extensive online advertising, sales of KAT's visitor traffic, and KAT user donations.

14.     It was further part of the conspiracy that defendants Artem Vaulin, Ievgen Kutsenko, and Oleksandr Radostin, in order to hide the illicit proceeds generated from the conspiracy, instructed advertisers and caused others to instruct advertisers to deliver funds to bank accounts in the name of various corporate shell companies controlled by KAT and to hide the nature of the payments.

15.     It was further part of the conspiracy that defendants Artem Vaulin, Ievgen Kutsenko, and Oleksandr Radostin operated and caused others to operate a direct download feature on KAT to enable users to download copyright-protected material directly from the website httptorrents.com, which was operated by the defendants and others.

16.    It was further part of the conspiracy that defendants Artem Vaulin, Ievgen Kutsenko, and Oleksandr Radostin changed and caused others to change the website domain name for KAT several times during the conspiracy (e.g., from kickasstorrents.com to kat.ph and from kickass.to to kat.cr), in part to avoid and circumvent court orders that sought to block users' access to KAT because of KAT's copyright infringement, and provided guidance to users on KAT's website regarding how to avoid and circumvent those court orders.

17.    It was further part of the conspiracy that defendants Artem Vaulin, Ievgen Kutsenko, and Oleksandr Radostin used and caused others to use social media, such as Facebook and Twitter, to increase visitor traffic to KAT by advertising KAT, communicating with KAT users, and providing updates about the new locations of KAT's website domain.

18.    It was further part of the conspiracy that defendants Artem Vaulin, Ievgen Kutsenko, Oleksandr Radostin, and others operated KAT and caused others to operate KAT using a network of computer servers from around the world, including computer servers located in Chicago, Illinois, which were rented through separate intermediaries in order to hide the conspiracy.

19.    It was further part of the conspiracy that defendants Artem Vaulin, Ievgen Kutsenko, Oleksandr Radostin developed and caused others to develop a software program, often called a BitTorrent "client," which they made available on KAT and which facilitated the downloading of infringed copyrighted content.

20.     It was further part of the conspiracy that defendants Artem Vaulin, Ievgen Kutsenko, Oleksandr Radostin, and others created and operated and caused others to create and operate the website subtitlesource.com, which they used to host files of subtitles in multiple languages for movies and television shows available on KAT.

### The Operation of the Direct Download Websites

21.     It was further part of the conspiracy that defendants Artem Vaulin, Ievgen Kutsenko, and Oleksandr Radostin operated and caused others to operate the direct download websites that hosted or made available infringed copies of copyrighted works, including movies (some of which were still playing in theaters), music recordings, and television shows.

22.     It was further part of the conspiracy that defendants Artem Vaulin, Ievgen Kutsenko, Oleksandr Radostin, and others generated significant funds from the copyright-infringing material available on the direct download websites by soliciting and causing others to solicit fees from users of the direct download websites, online advertising, and website traffic sales.

23.     It was further part of the conspiracy that defendants Artem Vaulin, Ievgen Kutsenko, Oleksandr Radostin, and others promoted and caused others to promote visitor traffic to one of their direct download websites, solarmovie.com, by providing KAT users with a hyperlink to solarmovie.com when they sought to download torrent files from KAT.

24.　It was further part of the conspiracy that defendants Artem Vaulin, Ievgen Kutsenko, Oleksandr Radostin, and others operated KAT, torcache.net, and the direct download websites through a Ukrainian-based company called "Cryptoneat" in order to hide their operations and their role in the conspiracy.

25.　It was further part of the conspiracy that defendants Artem Vaulin, Ievgen Kutsenko, Oleksandr Radostin, and others concealed, misrepresented, and hid and caused to be concealed, misrepresented, and hidden, the existence and purpose of the conspiracy and the acts done in furtherance of the conspiracy.

## Overt Acts

26.　In furtherance of the conspiracy and to accomplish its unlawful objectives, defendants Artem Vaulin, Ievgen Kutsenko, Oleksandr Radostin, and others committed and caused to be committed the following overt acts in the Northern District of Illinois and elsewhere:

a.　In or about 2011, defendants Artem Vaulin and Ievgen Kutsenko hired a software developer to create a BitTorrent client, and on or about September 22, 2011, Vaulin and Kutsenko received an email with a copy of the "final version" of a BitTorrent client from the software developer.

b.　On or about November 24, 2011, defendant Artem Vaulin emailed a KAT employee regarding an invoice for KAT's advertising from a United States advertiser.

c.　On or about December 10, 2011, defendant Ievgen Kutsenko rented the website domain subtitlesource.com.

9

d.      On or about December 12, 2011, defendant Artem Vaulin emailed a KAT employee a chart regarding KAT's advertising revenue in various countries.

e.      By on or about March 7, 2012, defendants Artem Vaulin, Ievgen Kutsenko, Oleksandr Radostin, and others used and caused the use of computer servers in Chicago to provide mail services to KAT's administrators and employees.

f.      On or about May 24, 2012, defendant Artem Vaulin engaged in an electronic chat with an individual about an Italian court order aimed at blocking access to KAT.

g.      By on or about July 5, 2012, defendants Artem Vaulin, Ievgen Kutsenko, Oleksandr Radostin, and others used and caused the use of computer servers in Chicago to operate KAT's main website at the time, kickasstorrents.com.

h.      On or about September 25, 2012, defendant Ievgen Kutsenko received an email regarding defendant Artem Vaulin's proposed improvements to torcache.net and how to better integrate torcache.net into KAT.

i.      On or about December 10, 2012, defendant Artem Vaulin created an "urgent" task for one of KAT's employees to fix KAT's integration with its social media accounts.

j.      On or about September 17, 2013, KAT's website made available and distributed copyrighted movies that had not yet been released on DVD, including, among many others, The Butler.

k.     On or about August 20, 2014, funds from KAT's Bitcoin donation address were redirected to a United States-based account belonging to defendant Artem Vaulin.

l.     On or about November 24, 2015, an administrator at KAT sent an email to an undercover agent with the Internal Revenue Service, responding to the undercover agent's inquiry about placing advertising on KAT.

m.     On or about December 9, 2015, an administrator at KAT sent an email to the undercover agent with the Internal Revenue Service that directed the undercover agent to send a payment for advertising on KAT's website to a Latvia-based account held in the name of a corporate shell company named "GA Star Trading," and requested that the undercover agent not "mention KAT anywhere" in connection with the payment.

n.     On or about December 29, 2015, KAT accepted payment under the name GA Star Trading from a U.S. advertiser that wire-transferred approximately $124,000 from a U.S. bank to the Latvian bank account held in the name GA Star Trading.

o.     Between on or about January 13, 2016, and on or about January 20, 2016, defendant Artem Vaulin accessed and caused access to the administrative account for the Chicago computer servers rented by KAT.

p.     On or about March 9, 2016, as part of the undercover operation, the IRS wire-transferred $1,500 from a location in Chicago to the GA Star Trading

account in Latvia, consisting of a payment for advertising on KAT for five days at $300 per day.

q.     On or about March 15, 2016, KAT placed the Internal Revenue Service undercover agent's advertisement on its website, which was presented to users when they clicked on a link that purportedly allowed users to "[d]ownload faster" the prerelease, copyrighted movie Deadpool.

r.     On or about March 31, 2016, KAT accepted payment to a WebMoney account from a U.S. advertiser that wire-transferred approximately $12,345 from a U.S. bank account to that WebMoney account.

s.     On or about April 21, 2016, KAT accepted payment under the name of the corporate shell company "Delovar Business" from an advertiser that wire-transferred approximately $134,595 to a Latvian bank account held in the name of Delovar Business.

t.     On or about May 11, 2016, an administrator at KAT sent an email to the undercover agent with the Internal Revenue Service that directed the undercover agent to send a payment for advertising on KAT's website to an Estonia-based account held in the name of a corporate shell company named "Glomeratus," and again requested that the undercover agent not "mention KAT" as part of any transaction.

u.     On or about May 26, 2016, KAT accepted payment under the name Glomeratus from a U.S. advertiser that wire-transferred approximately

$135,000 from a U.S. bank account to the Estonian bank account held in the name of Glomeratus.

    v.  Between on or about June 24, 2016, and on or about June 30, 2016, KAT made available and distributed without authorization the following copyrighted movies that had not yet been released on DVD, among many others: Batman V Superman: Dawn of Justice, Deadpool, X-Men Apocalypse, Captain America: Civil War, Teenage Mutant Ninja Turtles: Out of the Shadows, Central Intelligence, Warcraft, Now You See Me 2, and Jungle Book.

    w.  On or about June 30, 2016, KAT accepted payment under the name of the corporate shell company "Capital Steel Construction" from a U.S. advertiser that wire-transferred approximately $133,300 from a U.S. bank account to a Latvian bank account held in the name of Capital Steel Construction.

    x.  On or about July 1, 2016, as part of the undercover operation, the IRS wire-transferred approximately $1,000 from a location in Chicago to the Glomeratus bank in Estonia to purchase additional advertising on KAT.

  All in violation of Title 18, United States Code, Section 371.

## COUNT TWO

The SPECIAL JUNE 2015 GRAND JURY further charges:

1.      Paragraph 1 of Count 1 is incorporated here.

2.      On or about September 17, 2013, in the Northern District of Illinois, Eastern Division, and elsewhere,

ARTEM VAULIN, aka "tirm," and
OLEKSANDR RADOSTIN, aka "Alex Radostin," "pioneer," and "pio,"

defendants herein, willfully, and for purposes of commercial advantage and private financial gain, infringed a copyright by distributing a work being prepared for commercial distribution in the United States, namely, the copyrighted motion picture "The Butler," by making it available on a computer network accessible to members of the public, when defendants knew and should have known that the work was intended for commercial distribution;

In violation of Title 17, United States Code, Section 506(a)(1)(C) and Title 18, United States Code, Sections 2319(d)(2) and 2.

14

## COUNTS THREE THROUGH TWELVE

The SPECIAL JUNE 2015 GRAND JURY further charges:

1.      Paragraph 1 of Count 1 is incorporated here.

2.      On or about the dates listed below, in the Northern District of Illinois, Eastern Division, and elsewhere,

ARTEM VAULIN, aka "tirm," and
OLEKSANDR RADOSTIN, aka "Alex Radostin," "pioneer," and "pio,"

defendants herein, willfully, and for purposes of commercial advantage and private financial gain, infringed a copyright by distributing a work being prepared for commercial distribution in the United States, by making it available on a computer network accessible to members of the public, when defendants knew and should have known that the work was intended for commercial distribution, as set forth below:

| Count | Date | Copyrighted Work |
|-------|------|------------------|
| 3 | June 24, 2016 | Batman V Superman: Dawn of Justice |
| 4 | June 24, 2016 | Deadpool |
| 5 | June 24, 2016 | X-Men Apocalypse |
| 6 | June 27, 2016 | Captain America: Civil War |
| 7 | June 28, 2016 | Teenage Mutant Ninja Turtles: Out of the Shadows |
| 8 | June 30, 2016 | Central Intelligence |
| 9 | June 30, 2016 | Warcraft |
| 10 | June 30, 2016 | Now You See Me 2 |
| 11 | June 30, 2016 | Jungle Book |
| 12 | July 7, 2016 | Warcraft |

In violation of Title 17, United States Code, Section 506(a)(1)(C) and Title 18, United States Code, Sections 2319(d)(2) and 2.

15

## COUNT THIRTEEN

The SPECIAL JUNE 2015 GRAND JURY further charges:

1.      Paragraph 1 of Count 1 is incorporated here

2.      For the 180 days leading up to and including July 8, 2016, in the Northern District of Illinois, Eastern Division, and elsewhere,

ARTEM VAULIN, aka "tirm," and
OLEKSANDR RADOSTIN, aka "Alex Radostin," "pioneer," and "pio,"

defendants herein, willfully, and for purposes of commercial advantage and private financial gain, infringed copyrights in certain motion pictures, television programs, music recordings, electronic books, video games, and other computer software, by reproducing and distributing over the Internet, at least ten copies and phonorecords of one or more copyrighted works which had a total retail value of more than $2,500;

In violation of Title 17, United States Code, Section 506(a)(1)(A) and Title 18, United States Code, Sections 2319(b)(1) and 2.

## COUNT FOURTEEN

The SPECIAL JUNE 2015 GRAND JURY further charges:

1.     Paragraph 1 of Count 1 is incorporated here.

2.     From at least as early as in or about November 2008, to on or about July 20, 2016, in the Northern District of Illinois, Eastern Division, and elsewhere,

ARTEM VAULIN, aka "tirm,"
IEVGEN KUTSENKO, aka "Eugene Kutsenko" and "chill," and
OLEKSANDR RADOSTIN, aka "Alex Radostin," "pioneer," and "pio,"

defendants herein, together with others known and unknown to the Grand Jury, conspired to:

        a.     knowingly transmit and transfer funds from a place in the United States to a place outside the United States with the intent to promote the carrying on of specified unlawful activity, namely, criminal copyright infringement, in violation of Title 18, United States Code, Section 1956(a)(2)(A); and

        b.     knowingly transmit and transfer funds from a place in the United States to a place outside the United States, knowing that the funds involved in the transmission and transfer represented the proceeds of some form of unlawful activity, and knowing that the transmission and transfer was designed in whole or in part to conceal and disguise the nature, the location, the source, the ownership, and the control of the proceeds of specified unlawful activity, namely, criminal copyright infringement, in violation of Title 18, United States Code, Section 1956(a)(2)(B)(i).

3.     It was part of the conspiracy that defendants Artem Vaulin, Ievgen Kutsenko, Oleksandr Radostin, and others coordinated and directed and caused

others to coordinate and direct the transfer of funds derived from criminal copyright infringement from the United States to a place outside of the United States and did so in a manner designed to conceal the nature, location, source, ownership, and control of the funds and with the intent to promote criminal copyright infringement.

4.     It was further part of the conspiracy that defendants Artem Vaulin, Ievgen Kutsenko, Oleksandr Radostin, and others generated millions of dollars from the copyright-infringing material that KAT made available by soliciting and causing others to solicit extensive online advertising, sales of KAT's visitor traffic, and KAT user donations.

5.     It was further part of the conspiracy that defendants Artem Vaulin, Ievgen Kutsenko, Oleksandr Radostin, and others generated significant funds from the copyright-infringing material available on the direct download websites by soliciting and causing others to solicit fees from users of the direct download websites, online advertising, and website traffic sales.

6.      It was further part of the conspiracy that defendants Artem Vaulin, Ievgen Kutsenko, Oleksandr Radostin, and others formed and operated, and caused others to form and operate, a collection of corporate shell companies to receive funds derived from KAT, torcache.net, and the direct download websites, thereby concealing and disguising the nature, location, source, ownership, and control of the funds, and facilitating the transfer of the funds derived from criminal copyright infringement to the defendants and others, with the intent to promote criminal copyright infringement.

7. It was further part of the conspiracy that defendants Artem Vaulin, Ievgen Kutsenko, Oleksandr Radostin, and others, in order to hide the illicit proceeds generated from the conspiracy, instructed advertisers to deliver funds to bank accounts in the name of various corporate shell companies controlled by KAT and to not mention KAT in connection with the payment of funds.

8. It was further part of the conspiracy that defendants Artem Vaulin, Ievgen Kutsenko, Oleksandr Radostin, and others concealed, misrepresented, and hid and caused to be concealed, misrepresented, and hidden, the existence and purpose of the conspiracy and the acts done in furtherance of it.

In violation of Title 18, United States Code, Sections 1956(h) and 2.

## COUNT FIFTEEN

The SPECIAL JUNE 2015 GRAND JURY further charges:

1.      Paragraph 1 of Count 1 is incorporated here.

2.      On or about March 9, 2016, in the Northern District of Illinois, Eastern Division, and elsewhere,

ARTEM VAULIN, aka "tirm," and
OLEKSANDR RADOSTIN, aka "Alex Radostin," "pioneer," and "pio,"

defendants herein, knowingly transmitted and transferred funds from a place in the United States to a place outside the United States, namely, approximately $1,500 in funds from Chicago, Illinois, to a bank account in Latvia held in the name GA Star Trading, knowing that the funds involved in the transmission and transfer represented the proceeds of some form of unlawful activity, and knowing that the transmission and transfer was designed in whole or in part to conceal and disguise the nature, the location, the source, and the ownership, and the control of the proceeds of specified unlawful activity, namely, criminal copyright infringement;

In violation of Title 18, United States Code, Sections 1956(a)(2)(B)(i) and 2.

20

## COUNT SIXTEEN

The SPECIAL JUNE 2015 GRAND JURY further charges:

1.     Paragraph 1 of Count 1 is incorporated here.

2.     On or about July 1, 2016, in the Northern District of Illinois, Eastern Division, and elsewhere,

ARTEM VAULIN, aka "tirm," and
OLEKSANDR RADOSTIN, aka "Alex Radostin," "pioneer," and "pio,"

defendants herein, knowingly transmitted and transferred funds from a place in the United States to a place outside the United States, namely, approximately $1,000 in funds from Chicago, Illinois, to a bank account in Estonia held in the name Glomeratus, with the intent to promote the carrying on of specified unlawful activity, namely, criminal copyright infringement;

In violation of Title 18, United States Code, Sections 1956(a)(2)(A) and 2.

## FORFEITURE ALLEGATION

The SPECIAL JUNE 2015 GRAND JURY alleges:

1.      Upon conviction of an offense in violation of Title 18, United States Code, Section 371, as set forth in this Indictment, defendants shall forfeit to the United States of America any property that constitutes and is derived from proceeds traceable to the offense, as provided in Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

2.      Pursuant to Title 18, United States Code, Section 2323, upon conviction of the offense in violation of Title 18, United States Code, Section 2319, as set forth in this Indictment, defendants shall forfeit to the United States of America:

a.      any article, the making or trafficking of which is, prohibited under Title 18, United States Code, Section 2319 or Title 17, United States Code, Section 506;

b.      any property used, or intended to be used, in any manner or part to commit or facilitate the commission of a violation of Title 18, United States Code, Section 2319 or Title 17, United States Code, Section 506; and

c.      any property constituting or derived from any proceeds obtained directly or indirectly as the result of the commission of a violation Title 18, United States Code, Section 2319 or Title 17, United States Code, Section 506.

3.      Upon conviction of an offense in violation of Title 18, United States Code, Sections 1956(h), 1956(a)(2)(A), and 1956(a)(2)(B), as set forth in this Indictment, defendants shall forfeit to the United States of America, any property involved in

such offense, and any property traceable to such property, as provided in Title 18, United States Code, Sections 981(a)(1)(A) and 982(a)(1).

4.      If any of the property described above, as a result of any act or omission by a defendant: cannot be located upon the exercise of due diligence; has been transferred or sold to, or deposited with, a third party; has been placed beyond the jurisdiction of the Court; has been substantially diminished in value; or has been commingled with other property which cannot be divided without difficulty, the United States of America shall be entitled to forfeiture of substitute property, as provided in Title 21, United States Code, Section 853(p).

A TRUE BILL:

_____
FOREPERSON


_____
UNITED STATES ATTORNEY

23